## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

THE BOTHWELL LAW GROUP,    :
P.C. and MIKE BOTHWELL,    :
    :
    Plaintiffs,    :
    :    CIVIL ACTION NO.
v.    :    1:15-CV-2795-RWS
    :
JULIE BRACKER, *et al.*,    :
    :
    Defendants.    :

## ORDER

This case comes before the Court on Plaintiffs' Motion to Remand [15] and Defendants' Motion to Supplement the Record [45].[1]  After reviewing the record, the Court enters the following Order.

## Background

This action arises from a dispute between previous law firm partners. Plaintiff Mike Bothwell is the owner and sole shareholder of Plaintiff law firm, Bothwell Law Group ("BLG"), and Defendants are two attorneys and a paralegal who were previously employed at BLG but separated to begin their

---

[1] Also pending is Plaintiffs' Motion to Strike Defendants' Motion for Judgment on the Pleadings [13].  But because Defendants have withdrawn their Motion for Judgment on the Pleadings [4], Plaintiffs' Motion to Strike [13] is **DENIED as moot**.

own firm.  (Am. Compl., Dkt. [12] ¶¶ 9-12, 18, 52.)  BLG handles

whistleblower litigation: cases brought pursuant to the False Claims Act

("FCA") on behalf of the United States under seal in federal court.  (Defs.'

Resp. to Mot. to Remand, Dkt. [21] at 1.)  Defendants' new firm is a competing

whistleblower litigation firm, allegedly formed by misappropriating client files

and other information from BLG.  (Mot. to Remand, Dkt. [15-1] at 1-2.)

Plaintiffs initially filed their Complaint in Fulton County Superior Court

alleging twelve state law claims and one federal claim: violation of the Federal

Computer Fraud and Abuse Act ("CFAA").  Defendants then removed the

action to this Court on the basis of federal question jurisdiction because of the

CFAA claim.  (Notice of Removal, Dkt. [1] ¶ 9)  Shortly after removal,

Plaintiffs filed an Amended Complaint [12] omitting the CFAA claim, but still

including the following eleven state law claims: Fraudulent Misrepresentation

and Concealment (Count I), Breach of Fiduciary Duty (Count II), Conversion

(Count III), Misappropriation of Corporate Opportunity (Count IV), Tortious

Interference with Contractual Relations (Count V), Tortious Interference with

Business Relations (Count VI), Defamation (Count VII), Violations of the

Georgia Computer Systems Protection Act (Count VIII), Unjust Enrichment

2

(Count IX), Violation of the Georgia Racketeer Influenced and Corrupt

Enterprises Act (Count X), and Civil Conspiracy / Aiding and Abetting (Count

XI).  On the same day they filed the Amended Complaint, Plaintiffs also filed a

Motion to Remand [15].  Defendants then filed their Amended Answer [19],

asserting three state law counterclaims and one federal counterclaim for

violation of the Fair Labor Standards Act.[2]

## Discussion

## I.    Defendants' Motion to Supplement the Record [45]

Defendants' Motion to Supplement the Record [45] seeks to add to the

record a brief filed by the United States in U.S. ex rel. McCullough v.

Nashville Pharmacy Servs., LLC, No. 3:12-cv-0823 (M.D. Tenn.), which is one

of the FCA cases underlying BLG's claims in this case.  Defendants use this

brief to argue that "only a federal court can adequately protect the interests of

the United States government."  (Defs.' Mot. to Supp. the Record, Dkt. [45]

¶ 4.)

Plaintiffs oppose Defendants' motion, arguing that Defendants should

---

[2] Initially, Defendants also asserted a counterclaim for violation of the CFAA in their Answer [2].  However, this claim no longer appears in the Amended Answer [19].

not be allowed to raise a new argument through the proposed supplemental

filing that was not raised in Defendants' response to Plaintiffs' Motion to

Remand.  It seems to the Court, however, that the United States' brief in

McCullough is merely additional support for the argument Defendants already

made in their response: that the federal interests in this case weigh in favor of

remand.  Because of this, and because the Court finds that Plaintiffs have been

afforded an adequate opportunity to respond to this supplemental authority in

their response, Defendants' Motion to Supplement the Record [45] is

**GRANTED**.  The Court will discuss the impact of the United States' brief in

McCullough in part II.B.4., *infra*.

## II.   Plaintiffs' Motion to Remand [15]

### A.   Legal Standard

A case is removable from state to federal court when it contains a claim

over which a district court has original jurisdiction.  28 U.S.C. § 1441(a).  In

such a case, the district court may exercise supplemental jurisdiction over "all

other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy."  28 U.S.C.

§ 1367(a).  The district court may, however, decline to exercise supplemental

4

jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Id. at § 1367(c).  And when a removed case contains a claim "not within the original or supplemental jurisdiction of the district court," 28 U.S.C. § 1367(c)(1)(B), the district court "shall sever from the action all claims [not within its original or supplemental jurisdiction] and shall remand the severed claims to the State court from which the action was removed," 28 U.S.C. § 1367(c)(2).

> B.   Analysis

The parties' arguments center around subsections (2) and (3) of § 1367(c): substantial predominance and the presence of a claim over which the Court has original jurisdiction.  Looking beyond § 1367 in opposing remand,

5

Defendants also raise the issues of whether Plaintiffs' alleged forum manipulation or the existence of extensive federal interests weigh against remand. The Court will address each of these in turn.

>    1.    *Does the Amended Complaint Contain a Claim Over Which the District Court has Original Jurisdiction?*

Even though Plaintiffs omitted their CFAA claim—the only explicit federal claim—from their Amended Complaint, Defendants assert that Count X of Plaintiffs' Amended Complaint contains a separate federal question. Count X is a Georgia Racketeer Influenced and Corrupt Organizations ("RICO") claim—a state law claim—but, as predicate acts, Plaintiffs allege that Defendants violated federal mail and wire fraud statutes. (Defs.' Resp. to Mot. to Remand, Dkt. [21] at 2.) Defendants argue that this raises a federal question because Plaintiffs' Georgia RICO claim is dependent on deciding whether Defendants violated federal statutes.

Defendants cite Ayres v. Gen. Motors Corp., 234 F.3d 514 (11th Cir. 2000) as support for their position, but Ayres is easily distinguishable from the facts here. In Ayres, the Eleventh Circuit considered whether the plaintiff's Georgia RICO claim implicated federal question jurisdiction when Plaintiffs

6

alleged federal mail and wire fraud as predicate acts.  Id. at 518.  It held in the affirmative, but only because the plaintiffs' Georgia RICO claim was based exclusively on the defendants' use of mails and wires to perpetuate a scheme of fraudulent acts constituting racketeering.  Id.  The Eleventh Circuit held that the plaintiffs' Georgia RICO claim only implicated federal question jurisdiction because "a violation of the federal mail and wire fraud statutes [was] an essential element of the Plaintiffs' cause of action."  Id.  The court expressly noted that "resolution of this case depend[ed] *entirely* on the interpretation of the federal mail and wire fraud statutes."  Id. (emphasis added).  Thus, federal question jurisdiction was implicated because the case required resolution of a "very substantial federal question" in proving a violation of the alleged federal crimes.  Id. at 520.  Particularly important here, the court noted that its holding did not mean that every Georgia RICO claim predicated on a violation of federal mail or wire fraud statutes raises a federal question.  Id. at 519.

Unlike in Ayers, the resolution of Plaintiffs' Georgia RICO claim does not depend entirely on the federal mail and wire statutes.  In Count X, Plaintiffs allege that Defendants violated Georgia RICO not only by violating the federal

7

mail and wire fraud statutes, but also by violating various sections of the Georgia code.  (Am. Compl., Dkt. [12] ¶ 234.)  Thus, Count X does not depend exclusively on violations of the federal statutes as did the Georgia RICO claim in Ayers.  See 234 F.3d at 518.  Even if the federal mail and wire fraud allegations were removed as predicates to Plaintiffs' Georgia RICO claim, Plaintiffs could still sustain that claim based on the other non-federal predicates.

Defendants further assert that the predicate violations of federal mail and wire fraud statutes invoke a theory of honest services fraud, which they claim raises a substantial and unsettled federal question.  (Defs.' Resp. to Mot. to Remand, Dkt. [21] at 6.)  Defendants explain that, before 2010, federal prosecutors used the federal mail fraud statute to develop a theory of honest services fraud that occurred when an employee deprived his employer of its right to have its affairs conducted free from deceit or fraud.  Id. at 6-7.  In 2010, however, the Supreme Court instead construed "honest services" under another criminal statute "to encompass only bribery and kickback schemes." Skilling v. United States, 561 U.S. 358, 412 (2010).  According to Defendants, the Eleventh Circuit has yet to sort out which employee duties can give rise to

8

mail or wire fraud claims after <u>Skilling</u>.  Thus, Defendants argue that the

Amended Complaint contains a substantial federal question to the extent the

federal mail and wire fraud predicates involve a theory of honest services

fraud.

Plaintiffs correctly point out, however, that their allegations do not

involve honest services fraud, so any argument based on <u>Skilling</u> or the

Eleventh Circuit's reaction is misplaced.  (Pls.' Reply in Supp. of Mot. to

Remand, Dkt. [27] at 3.)  First, the face of the Amended Complaint reveals that

Plaintiffs are not pursuing an honest services fraud theory as the Amended

Complaint does not even mention 18 U.S.C. § 1346, the honest services fraud

statue.  Second, Plaintiffs' allegations do not fit a theory of honest services

fraud, which is based on the deprivation of an "intangible right of honest

services."  18 U.S.C. § 1346.  Plaintiffs' allegations, by contrast, are based on

the deprivation of property.  (Am. Compl., Dkt. [12] ¶ 235.)  For these reasons,

the Court agrees with Plaintiffs that the Amended Complaint contains no

federal question relating to honest services fraud.

Aside from their argument that Plaintiffs' Georgia RICO claim (Count

X) raises a federal question, Defendants point to no other federal question in

9

the Amended Complaint.  So, having rejected Defendants' argument as to Count X, the Court finds that the Amended Complaint contains no federal question.  The Court recognizes that a federal counterclaim still remains, but this is irrelevant to the inquiry under § 1367(c)(3) because "a federal counterclaim cannot provide the Court with original jurisdiction over an action." Yan v. Franklin Credit Mgmt. Corp., No. CIV. 13-1273 (FSH), 2013 WL 2950652, at *3 (D.N.J. June 14, 2013) (citing Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826 (2002)).  For this reason, the Court has discretion to decline supplemental jurisdiction under § 1367(c)(3). Nonetheless, the Court will still address the remainder of the parties' arguments.

> ### 2.   *Do Federal Interests Substantially Predominate Over State Law Claims?*

As discussed in Part II.B.1., *supra,* this Court does not have original jurisdiction over any of the claims asserted in Plaintiffs' Amended Complaint. This alone is sufficient for the Court to decline supplemental jurisdiction over the remaining claims, but the Court may also decline to exercise supplemental jurisdiction over a claim that "substantially predominates over the claim or

AO 72A
(Rev.8/82)

claims over which the district court has original jurisdiction." 28 U.S.C.

§ 1367(c)(2).[3]  Substantial predominance exists when "it appears that a state

claim constitutes the real body of a case, to which the federal claim is only an

appendage." Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 744 (11th

Cir. 2006) (quoting McNerny v. Nebraska Pub. Power Dist., 309 F. Supp. 2d

1109 (D. Neb. 2004)).

The only causes of action that remain are eleven state law claims and one

federal counterclaim.  Plaintiffs contend that the state law claims substantially

predominate because their complaint is wholly centered around a breach of

fiduciary duty, an issue governed by state law.  (Mot. to Remand, Dkt. [15-1] at

2.)  Although Defendants argue that this does not constitute a novel or complex

area of law and that the presence of substantial predomination should not

control this Courts' decision, the Court disagrees.  At its core, this case is about

Defendants' alleged breach of fiduciary duty.  Accordingly, the state law

claims substantially predominate in this case.

---

[3] The Court declines to lend credence to Defendants' argument that Plaintiffs
waived their reliance on this portion of the statute.  Plaintiff does argue that the Court
has the authority to remand when state law claims substantially predominate over any
federal claim.  (Mot. to Remand, Dkt. [15-1] at 12-19.)

3.     *Should Plaintiffs' Removal of the Sole Federal Law Claim Weigh Against Remand?*

Defendants assert that Plaintiffs should not be allowed to remand their case after omitting the federal claim from their Amended Complaint because this constitutes an improper attempt to manipulate the forum.  (Defs.' Resp. to Mot. to Remand, Dkt. [21] at 8.)  But even assuming that manipulation was Plaintiffs' sole intention when omitting the CFAA claim from their Amended Complaint, Plaintiffs' attempt to secure a state forum does not control this Court's ability to remand.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988) ("When the single federal-law claim in the action [is] eliminated at an early stage of the litigation, the District Court [has] a powerful reason to choose not to continue to exercise jurisdiction.").  The Supreme Court in Cohill directed the district courts to consider forum manipulation when deciding whether to remand, but also noted that a concern for manipulative tactics "hardly justifies a categorical prohibition on the remand of cases involving state-law claims regardless of whether the plaintiff has attempted to manipulate the forum."  Id. at 357.

While Defendants cite a number of non-binding cases where the court

12

denied remand solely on the basis of forum manipulation, none of those cases were in a similar procedural posture to this case.  See, e.g., Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 211 (6th Cir. 2004) (declining remand because, among other reasons, parties already completed discovery); Unida v. Levi Strauss & Co., 986 F.2d 970, 975 (5th Cir. 1993) (holding that the district court had discretion not to remand because the case was at the summary judgment stage).  Unlike in those cases, this case is in its earliest stages.  And Plaintiffs cite a number of cases holding that an early, strategic decision to remove all but state law claims is no basis for denying remand.  See, e.g., Baddie v. Berkeley Farms, Inc., 64 F.3d 487, 491 (9th Cir. 1995) (holding that omitting federal claims and speedily moving for remand is not manipulative).  Thus, the Court will not deny remand simply because Plaintiffs removed the sole federal claim from their complaint.

### 4.    Do Federal Interests Weigh Against Remand?

Defendants argue that the *qui tam* cases that Defendants allegedly misappropriated present an overwhelming federal interest in keeping this case in federal court because its resolution will involve lifting the federal seal in those cases.  (Defs.' Resp. to Mot. to Remand, Dkt. [21] at 12-13.)  In short, the

13

Court disagrees.  Whether a case indirectly involves *qui tam* cases should not be the deciding factor in determining federal jurisdiction.  See Figueroa v. Szymoniak, No. 13-61020-CIV, 2013 WL 4496512, at *1 (S.D. Fla. Aug. 22, 2013) (remanding a legal malpractice case to state court even though the nature of the claim required the plaintiff to prove the merits of the underlying FCA claim).  Defendants cite a handful of authorities describing the importance of the federal seal, but none of them show that any interest relating to the federal seal outweighs the general principle of allowing state courts to resolve state law disputes.

As discussed in Part I, *supra*, Defendants assert that a brief filed by the United States government in a different federal case—McCullough—shows that this action should not be remanded to state court because of the federal interests at stake.  (Defs.' Mot. to Supplement, Dkt. [45] ¶¶ 1-2.)  In McCullough, BLG—as former counsel for the relator—filed an attorney's lien against the relator.  Because of the lien, the United States declined to release the relator's share payment.  As a result, the relator filed a motion to dissolve BLG's attorneys' lien and BLG responded by filing a separate state court action involving the fee issue.  The United States' brief in McCullough

14

supports dissolution of BLG's lien because, the United States argues, the state court action has the potential to draw the United States in as a party given that the United States is holding funds due to the relator.

Defendants cite the United States' brief as support for their argument against remand, arguing that the United States' reluctance to become involved in state court litigation foreshadows difficulties that could arise if the Court remands this case.  While the Court has reviewed and understands the United States' position in McCullough, it does not find that it establishes or identifies a federal interest sufficient to keep this case in federal court.  It is understandable that the United States would like to avoid being drawn into separate state court litigation, but that should not control the Court's exercise of jurisdiction over this case.  This is especially true in light of the Court's earlier findings that it may decline supplemental jurisdiction over the remaining claims in this case under multiple prongs of § 1367(c).

As a final matter, the principles of judicial economy, convenience, fairness, and comity support remand because this case is at the beginning stages of litigation and thus remand would not require a substantial duplication of effort.  Discovery has not been conducted yet, and Plaintiffs should be

15

allowed to proceed in the forum of their choosing. Defendants do not contest this Court's ability to remand the entire action, including the federal counterclaims. (Defs.' Resp. to Mot. to Remand, Dkt. [21] at n.10.) Thus, in the interest of allowing this litigation to proceed in the most efficient manner, the Court declines to sever the federal counterclaims so that all matters may be resolved by the same court.

## Conclusion

For the aforementioned reasons, Plaintiffs' Motion to Strike [13] is **DENIED as moot**. Defendants' Motion to Supplement the Record [45] and Plaintiffs' Motion to Remand [15] are both **GRANTED**. The Clerk is directed to **REMAND** this case to the State Court of Fulton County, Georgia.

**SO ORDERED**, this 19th day of July, 2016.

_____

**RICHARD W. STORY**
United States District Judge

16